## Barto *versus* Schmeck.

Where a third party endorses a negotiable note before the payee has negotiated it, he is liable to the payee if it can be proved that the object of the endorsement was to give the maker of the note credit with the payee.

On proof of such an understanding, the endorser would be liable in like manner to an endorsee of the payee, either of whom may write over the signature of the endorser an agreement corresponding with the facts susceptible of proof.

But where there is no extrinsic proof to charge such irregular endorser, and his liability is to be measured solely by the endorsement, he is not responsible to the payee at all, and only becomes responsible to a subsequent endorsee by the payee assuming the position of first endorser and negotiating the note on the credit of all the parties to it.

Taylor *v.* McCune, 1 *Jones* 463, examined and explained.

On such endorsement alone, the endorser is not liable to the payee, because it imported no liability to him, nor is he responsible to a holder who has taken it from the payee with the latter as second endorser, for he is thereby deprived of the recourse he would have to the payee as first endorser.

ERROR to the Common Pleas of *Berks county.*

This action was originally brought before a justice of the peace by Samuel R. Schmeck against Tobias Barto, on the following promissory note:—

[Barto *v.* Schmeck.]

" $50.00.                              " Reading, June 9, 1852.

" On demand, I promise to pay to Levan Mannerback, or order, fifty dollars without defalcation, for value received.

"WILLIAM REGAR."

Endorsed,

"TOBIAS BARTO,
"LEVAN MANNERBACK."

The summons issued on the 6th December, 1854, and was carried to the Common Pleas by appeal. The only witness examined for the plaintiff in the court below was Matthias Mengel, Esq., who testified as follows:—

"I am acquainted with William Regar's handwriting (note shown him); believe that to be his signature. Am acquainted with Tobias Barto's handwriting; believe his name on back to.be his handwriting. Am acquainted with Levan Mannerback's handwriting; that is his signature; believe William Regar was insolvent when this suit was brought. Constable returned *nulla bona* at that time. Summons issued by me on December 6, 1854, served December 7, 1854.

" My impression is, Levan Mannerback's name was not on note when it was brought to me. Can't say that I gave Barto notice before suit brought; don't think note was in my hands ten days before suit brought."

The court below (JONES, P. J.) charged the jury as follows:—

" From Kyner *v.* Shower we must infer that Barto intended to give credit to Regar's paper as an original promissor—but in what character, and how far, depends on circumstances. Whether absolutely bound as surety, or contingently as guarantor, the character might be shown by proof, but we have none in this case —we have nothing but the naked facts, that these signatures are those of the maker of the note and of Barto, and that the maker was insolvent before the proceeding was instituted against Barto. That being so, and this being a note endorsed by Barto out of the usual course, the engagement of Barto with regard to it is to meet any form of engagement that the payee might see fit to write over his name; as against Barto, it is all one, as if the note was joint and several by him and Regar. The holder could write such an engagement over his name.

" The jury will find for the plaintiff."

The verdict and judgment being for the plaintiff, the defendant removed the cause to this court, and assigned the charge of the court, and direction to find for the plaintiff, for error.

*McKenty*, for plaintiff in error.—There was no proof of demand and notice, and that is part of the plaintiff's case: *Green. Ev.* §§ 186, 176. Nor is the rule different where the note is endorsed out of the usual form: Taylor *v.* McCune, 1 *Jones* 460; Schollen-

[Barto v. Schmeck.]

berger v. Nehf, ante, 189; Fegenbush v. Lang, ante, 193; Kyner v. Shower, 1 *Harris* 444. The insolvency of Regar in December, 1854, will not obviate the necessity of demand and notice: Barton v. Baker, 1 *S. & R.* 334; Gibbs v. Cannon, 9 *Id.* 201; Russell v. Langstaffe, 2 *Doug. R.* 515; Nicholson v. Gouthit, 3 *H. Black.* 609; Bond v. Farnham, 5 *Mass.* 170, 172; Cropen v. Hutchinson, 9 *Id.* 205.

A note payable on demand must be presented within a reasonable time: 2 *Green. Ev.* § 208; *Byles on Bills* 163. What is a reasonable time? Seven days have been held sufficient: Tenner v. Lincoln, 21 *Pick.* 267; Thurston v. McKeon, 6 *Mass. R.* Five months an unreasonable delay: Tice v. Cunningham, 1 *Cow.* 397. Eight months unreasonable delay: Field v. Nickerson, 13 *Mass. R.* 131; Ayers v. Hutchins, 4 *Id.* 370. Two-and-a-half months unreasonable: Losee v. Dunkin, 7 *John.* 70; Culver v. Parker, 21 *Conn.* 411; Freeman v. Haskins, 2 *Caine* 308.

In this case there was no proof of demand and notice whatever until 7th December, 1854, when served with the summons, two years and six months from the date of the note.

In order to maintain a suit against Barto as guarantor, plaintiff must show that he used due diligence to recover of the maker —demand is not sufficient: Isett v. Hoge, 2 *Watts* 128; Johnson v. Chapman, 3 *P. R.* 18. And this question is for the jury: 2 *Wash. C. C. R.* 266; 3 *P. R.* 19; Rudy v. Wolff, 16 *S. & R.* 79.

*Banks* and *Van Reed*, for defendant in error.—What character does Barto bear in relation to this note? The defendant in error maintains that he is an original and joint promissor, and liable as such: White v. Howland, 9 *Mass. R.* 314. No demand and notice was necessary: Sumos v. Grey, 4 *Pick.* 311; Baker v. Briggs, 8 *Pick.* 121. By putting his name on the note in blank, he became an original promissor: Chaffee v. Jones, 19 *Pick.* 260; Austin v. Boyd, 24 *Pick.* 64; Simpson v. Thornton, 3 *Met.* 275; Richardson v. Lincoln, 5 *Id.* 203; Bryant v. Eastman, 7 *Cush.* 111; Roley v. Grish, 9 *Id.* 104; Union Bank, &c., v. Wells, 8 *Id.* 504; Benthall v. Judkins, 13 *Id.* 265; Campbell v. Butler, 14 *John.* 349; Snevely v. Johnson, 1 *W. & S.* 307; Amsbaugh v. Gearhart, 1 *Jones* 482; Leech v. Hill, 4 *Watts* 450; Kyner v. Shower, 1 *Harris* 446; 6 *Id.* 446; Campbell v. Knapp, 3 *Id.* 30.

The opinion of the court was delivered by

WOODWARD, J.—The plaintiff sues as endorsee of a note negotiable on its face; but the defendant whom he sues, not an original party to the note, appears to have endorsed it before the payee endorsed it to the plaintiff. Such an endorsement is out of the usual course of business, and makes the paper what was called in Leech v. Hill, 4 *Watts* 449, "an anomalous instrument."

VOL. IV.—29

[Barto *v.* Schmeck.]

Undoubtedly the endorser meant to pledge his responsibility for the payment of the note,—but how?

If he meant to be bound to the payee, as surety or guarantor for the maker, the plaintiff was bound to prove the agreement, or circumstances from which it might be fairly inferred. And to prove it by extrinsic evidence—not by the endorsement merely, because that being out of the usual course, cannot import either a guaranty or suretyship.

And when a party has evidence to define and explain such an endorsement, he may recover upon it as on any other cause of action which rests in parol.

But in this case there was no evidence explanatory of the endorsement. The question therefore is, what does it, of itself, and unaided by extrinsic proof, import? Simply that the defendant meant to stand as second endorser after the payee. This is the doctrine of the cases as examined and declared in Taylor *v.* McCune, 1 *Jones* 466, and as repeated lately in this court in the cases of Schollenberger *v.* Nehf, ante, 189, and Fegenbush *v.* Lang, ante, 193. In Kyner *v.* Shower, 1 *Harris* 466, Chief Justice GIBSON referred himself with approbation to Taylor *v.* McCune, but in stating the substance of that case, not then reported, he erroneously imputed to it the doctrine that, where there is no evidence to explain this anomalous kind of endorsement, the endorser " *authorizes the payee to write over his name any form of engagement he may see proper.*"

It was this observation that manifestly misled the learned judge below into deciding that, there being no evidence to explain Barto's endorsement, he was bound to meet any form of engagement the payee might see fit to write over his name.

An examination of Taylor *v.* McCune will show that no such proposition was affirmed, but that the ruling was to exactly the contrary effect, though the syllabus of the case proves that the reporter misapprehended it, not, indeed, in the same manner as Judge GIBSON, but quite as essentially.

It was a suit by McCune against Taylor on an endorsement made by the latter of a promissory note of Alexander Short to McCune, at six months. On the trial, evidence was given to explain the purposes of the endorsement, and the judge of the District Court of Allegheny instructed the jury that, if they believed the informal note was given by Short and Taylor to secure the plaintiff for the amount due to him, the note was to be construed according to the understanding of the parties. The jury did so believe, and the plaintiff had the verdict and judgment. When it came into this court, Judge BELL reviewed the cases on the subject of these informal endorsements, and declared that in all of them the event was made to depend on the express undertaking of the defendant as surety, "manifested, *not merely by his irre-*

*gular endorsement of the note, but by evidence aliunde;"* and then he proceeded to show that the extrinsic proof in the case failed to establish Taylor's liability; that the legal presumption, from the mere endorsement, was, that Taylor intended to stand as second endorser, and concluded by reversing the judgment in these words: "There was no *scintilla* of proof of an understanding of the parties, differing from that to be drawn from the instrument itself, and consequently the plaintiff was not entitled to recover."

Such is Taylor *v.* McCune; and the two propositions it establishes, and which have been enforced in the recent cases already referred to, may be stated thus:—

1st. That, where a third party endorses a negotiable note before the payee has negotiated it, he is liable to the payee if it can be proved that the object of the endorsement was to give to the maker of the note credit with the payee. And it is a fair inference from this proposition, that, on proof of such an understanding, the endorser would be in like manner liable to any endorsee of the payee, either of whom may write over the signature of the endorser an agreement corresponding with the facts susceptible of proof.

2d. But where there is no extrinsic or collateral proof to charge such an irregular endorser—where his liability is to be measured solely by the fact of endorsement, he is not responsible to the payee at all, and becomes responsible to a subsequent endorsee only by the payee's assuming the position of a first endorser, and then negotiating the note on the credit of all the parties to it.

The cases of Leech *v.* Hill, Kyner *v.* Shower, and Schollenberger *v.* Nehf, illustrate the first of these propositions, and Taylor *v.* McCune and Fegenbush *v.* Lang are illustrations of the second. There is no difficulty in classifying the case before us. It belongs to the second proposition.

There was no proof to charge Barto with liability to the payee, and he could be made liable to Schmeck as a subsequent holder only by the payee's assuming the responsibility of a first endorser. Barto must be presumed to have come upon the note as second endorser, with the expectation and understanding that Mannerback should be first endorser before it should be negotiated.

It was a fraud on Barto, therefore, for Mannerback to endorse below him, and to negotiate the note to Schmeck, without himself assuming the responsibility of a first endorser. And Schmeck took the note with his eyes wide open to the fact that Mannerback was the payee, and could not regularly be second endorser. This was a circumstance sufficient to discredit the commercial character of the paper, and to put Schmeck upon inquiry for the collateral agreement, which could alone entitle him to charge Barto as first endorser. The defence, therefore, is just as available against Schmeck as it would have been against Mannerback.

Barto is liable to neither—not to Mannerback, because his mere endorsement imported in law no liability to him—nor to Schmeck, because, in taking the note without Mannerback on it as first endorser, he deprived Barto of that recourse to Mannerback which he was entitled to have, and without which it is fair to presume he would not have endorsed the paper.

The judgment is reversed and a *venire de novo* awarded.